1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              SOUTHERN DISTRICT OF CALIFORNIA

10

11   STEVE TRUNK and PHILIP K. PAULSON,   )   Case No. 06 CV 1597 LAB (WMc)
                                          )
12                      Plaintiffs,        )   **ORDER GRANTING NON- PARTY**
                                          )   **CHARLES LIMANDRI'S MOTION TO**
13   v.                                    )   **QUASH AND FOR PROTECTIVE**
                                          )   **ORDER**
14   CITY OF SAN DIEGO, UNITED STATES      )
     OF AMERICA, DONALD H. RUMSFELD,       )
15   Secretary of Defense and DOES 1 through )
     100, Inclusive                        )
16                                         )
                        Defendants.        )
17                                         )
     MOUNT SOLEDAD MEMORIAL                )
18   ASSOCIATION, Real Parties in interest. )
                                          )
19   JEWISH WAR VETERANS OF THE            )
     UNITED STATES OF AMERICA, INC.,       )
20   RICHARD A. SMITH, MINA SAGHEB, and    )
     JUDITH M. COPELAND,                   )
21                                         )
                        Plaintiffs         )
22                                         )
     v.                                    )
23                                         )
     DONALD H. RUMSFELD, Secretary of      )
24   Defense, in his official capacity,    )
                                          )
25                      Defendant.         )
     _____)

26

27   ///

28   ///

# I.  INTRODUCTION

On July 6, 2007, Plaintiffs in Consolidated Case No. 06-CV-1728 (the "JWV Plaintiffs") served non-party Charles Li Mandri with a subpoena for his attendance at a deposition to take place on July 19, 2007 at the Law Offices of James McElroy, counsel for Plaintiffs Steve Trunk and Philip Paulson.[1]  (Doc. No. 137-4, Exh. A to LiMandri Decl.)  Mr. LiMandri is a practicing attorney in San Diego, California and the West Coast Regional Director of the Thomas More Law Center, a law firm in Ann Arbor, Michigan.  (Doc. No. 137-3,  LiMandri Decl., 2:3-7.)  On July 16, 2007, Mr. LiMandri filed a motion seeking to quash the deposition subpoena and requesting a protective order. [Doc. No. 137-2.]

On September 6, 2007, the Court heard oral argument.  After hearing from Mr. LiMandri's counsel, counsel for intervenors Congressmen Hunter, Issa and Bilbray and counsel of record as well as careful consideration of Mr. LiMandri's motion to quash and all briefs and exhibits filed in support and in opposition, for the reasons set forth below Mr. LiMandri's motion to quash and for protective order is **GRANTED**.

# II.

# BACKGROUND:  LAW OF THE CASE AS IT RELATES TO THE TAKING OF CONGRESSIONAL AND MAYORAL DEPOSITIONS

On April 2, 2007, the Court issued an Order denying Plaintiff Trunk's request to compel the depositions of Congressman Duncan Hunter and San Diego Mayor Jerry Sanders. [Doc. No. 106, p. 6, ln. 18-21.][2]  With respect to Congressman Hunter, the Court found that the testimonial privilege afforded by the Speech or Debate Clause of the United States Constitution prevented Plaintiff from deposing Representative Hunter regarding his motivations for supporting House Resolution 5683, 109th Cong. (2nd Sess.2006), a bill that was passed and signed into law by President Bush on August

---

[1]  By the September 22, 2006, Order of the Honorable Barry T. Moskowitz, *Trunk v. City of San Diego, et al.*, 06cv1597 LAB (WMc) has been consolidated with J*ewish War Veterans vs. Donald H. Rumsfeld, et al.* 06cv1728 LAB (WMc). [*See* Doc. No. 15 in Case No. 06cv1728.]

[2]The Court's April 2, 2007 Order is final and the law of the case "govern[ing] the same issue in subsequent stages of the same case." *Christianson v. Colt. Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).

1  14, 2006, Pub. L. No. 109-272, 120 Stat.770 (2006).[3]  [Doc. No. 106, p. 6, ln.18-21.]

2       In addition, the Court found that an inquiry into individual subjective motives for supporting

3  H.R. 5683 was irrelevant due to established case law holding that "[a] court's finding of improper

4  purpose behind a statute is appropriately determined by the statute on its face, its legislative history

5  .... the plain meaning of the statute's words, enlightened by their context and the contemporaneous

6  legislative history . . . . Moreover, in determining the legislative purpose of a statute, the Court has

7  also considered the historical context of the statute . . .and the specific sequence of events leading

8  to passage of the statute." *Edwards v. Aguillard,* 482 U.S. 578 at 594-595 [Citations omitted.] *See*

9  *also McCreary vs. ACLU,* 545 U.S. 844, 862 (2005).  [Doc. No. 106, p. 7, ln. 26 - p. 8, ln. 6.]

10       With respect to Plaintiff's request to take the deposition of one of San Diego's highest

11  ranking government officials, Mayor Sanders, the Court denied the request finding Plaintiff Trunk

12  failed to establish that the subjective information he sought was relevant, essential to his case and

13  not available through any alternative source or less burdensome means such as written discovery,

14  especially in light of the significant amount of other public source material available to Plaintiff.

15  [Doc. No. 106, pp. 5, 7-10.]

16                              **III. ARGUMENTS**

17  **A.     Motion to Quash and for Protective Order**

18           **1. Non-Party Charles LiMandri**

19       On July 16, 2007, Mr. LiMandri filed a motion to quash the deposition subpoena served on

20  him by JWV Plaintiffs and enter a protective order.  In support of his motion, Mr. LiMandri first

21  argues that Plaintiffs' attempt to take his deposition is an end-run around this Court's April 2, 2007

22  Order preventing the depositions of Mayor Sanders and Congressman Hunter.  [Doc. No.137-2,

23  6:17-21.] Mr. LiMandri contends that by deposing him, Plaintiffs would obtain information that they

24  could not obtain directly from Congressman Hunter and Mayor Sanders.  [Doc. No.137-2, 12:24-

25

26           [3]Specifically, Public Law No. 109-272 (referred to as the "Mt. Soledad Veterans Memorial Preservation Act") authorized the United States to acquire the Mount Soledad Veterans Memorial.  On September 8, 2006, the

27  Trunk Plaintiffs filed a first amended complaint against the City of San Diego, the United States of America and the Secretary of Defense, alleging that the Act and the continued display of the memorial violates the Establishment Clause of the U.S. Constitution as well as the No Preference and No Aid clauses of the California

28  Constitution. (Trunk Am. Comp., para. 26.)  The JWV Plaintiffs filed a complaint on August 24, 2006, raising one cause of action that also alleges a violation of the federal Establishment Clause.  (JWV Comp., para. 58.)

13:5.]   Further, Mr. LiMandri contends that if the motives behind H.R. 5683 are irrelevant to an Establishment Clause inquiry as to government officials, it is certainly irrelevant as to a private attorney advocating a position.  [Doc. No.137-2, 13:3-8.]

Next, Mr. LiMandri argues that the proposed testimony is protected by various privileges. As with the Congressman and Mayor, Mr. LiMandri argues that any information sought from him is irrelevant, protected, and accessible through public records.  Moreover, Mr. LiMandri states that attorney-client privilege and work-product doctrine both protect his confidential communications and work in relation to the Mt. Soledad cross matter.  [Doc. No.137-2, 16:1-17:19.]

Additionally, Mr. LiMandri asks that Court protect him from annoyance, embarrassment, oppression, and undue burden.  Mr. LiMandri notes that his own statements and positions are irrelevant to any alleged governmental purpose.  Mr. LiMandri believes that Plaintiffs' attempt to depose him evidences their hostility toward his religious beliefs.  [Doc. No.137-2, 18:9-14.]

**2. Intervenors Congressmen Duncan Hunter, Darrell Issa and Brian Bilbray**

Intervenors argue the Speech and Debate Clause, already held applicable to Congressman Duncan Hunter, also bars third-parties such as Mr. Limandri from being questioned about the representative's legislative activities and motivations. [Doc. No. 148, pp. 6-13.] Intervenors further contend that Mr. LiMandri may not be questioned on the topics of informal information gathering between Mr. LiMandri and the Congressman or preparation for legislative activities.   [Doc. No. 148, p.14-18.]  In the alternative, Intervenors request that in the event Mr. LiMandri's deposition is taken, counsel for the three members be allowed to participate in the deposition for the purpose of protecting Congressmen Hunter's, Issa's and Bilbray's rights under the Speech or Debate Clause. [Doc. No. 148, p. 19.]

**3. Federal Defendants**

The Federal Defendants argue that the deposition subpoena must be quashed because the testimony JWV Plaintiffs seek concerns the subjective motivation of legislators in sponsoring the Act, which is irrelevant under the first prong of the test for violation of the Establishment Clause as set forth in *Lemon vs. Kurtzman,* 403 U.S. 602,612-613 (1971), and as previously found by this Court in its April 2, 2007 Order.  [Doc. No. 152, pp. 8-10.]  Further, the Federal Defendants assert

1    that the requested testimony is similarly irrelevant under the remaining two prongs of the *Lemon*

2    *Test*.  [Doc. No. 152, p. 11.]  Federal Defendants also contend that Mr. LiMandri's deposition is

3    unnecessary because the JWV Plaintiffs have access to legislative history and historical context from

4    publicly available source materials.  [Doc. No. 152, p.12.]

5    **B.     JWV Plaintiffs' Opposition**

6            JWV Plaintiffs argue that Mr. LiMandri's deposition testimony is relevant and necessary to

7    their claim because of Mr. LiMandri's integral involvement in events leading up to the transfer of

8    the Mt. Soledad cross.  [Doc. No. 153, 6:13-7:2.]  JWV Plaintiffs propose questioning Mr. LiMandri

9    about his own involvement in the process to develop a fuller picture of the historical context behind

10   the Mt. Soledad cross matter, not about the motives of Congressman Hunter or Mayor Sanders.

11   [Doc. No. 153, 8:5-8.]  JWV Plaintiffs also argue that because actions of nongovernmental actors

12   affect the reasonable observer's perception of the governmental action, questioning Mr. LiMandri

13   about his own statements and actions is relevant to their claim.   [Doc. No. 153, 10:7-16.]

14          Additionally, JWV Plaintiffs argue that no privileges afford Mr. LiMandri a blanket

15   immunity from deposition.  In particular, JWV Plaintiffs contend that most of the services Mr.

16   LiMandri provided do not qualify for attorney-client privilege or work-product protection.  [Doc.

17   No. 153, 12:3-13:6.]  JWV Plaintiffs also argue that the Speech or Debate Clause fails to bar Mr.

18   LiMandri's deposition because: (1) it does not prevent third parties from testifying about their

19   communications with members of Congress in cases where the members do not face any conceivable

20   liability as a result of their legislative acts; (2) Mr. LiMandri's deposition would not threaten its

21   purposes; and (3) it does not protect the intervenors' informal information gathering activities.

22   [Doc. No. 153, 15:8-18.]

23          Finally, JWV Plaintiffs argue that Mr. LiMandri has no colorable argument that JWV

24   Plaintiffs have subjected him to annoyance, oppression or undue burden by serving him with a

25   deposition subpoena.  JWV Plaintiffs note that they complied with the Federal Rules of Civil

26   Procedure when noticing Mr. LiMandri's deposition. [Doc. No. 153, pp. 28-29.]

27   ///

28   ///

# IV.  STANDARDS

**A.    Subpoenas Pursuant to Rule 45 of the Federal Rules of Civil Procedure**

Under Rule 45 of the Federal Rules of Civil Procedure, a subpoena is required to command non-parties to attend and give testimony at a deposition. Fed. R. Civ. P. 45(a)(2)(B).  When preparing a subpoena under Rule 45, "a party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate action, which may include, but is not limited to, lost earnings and a reasonable attorney's fee." Fed. R. Civ. P. 45(c)(1).

In addition, the Court may quash or modify a deposition subpoena if it "requires disclosure of privileged or other protected matter and no exception or waiver applies."  Fed. R. Civ. P. 45(c)(3)(A)(iii).

**B.    Discovery Under Rule 26 of the Federal Rules of Civil Procedure**

In general, a party has the right to discovery of any matter, not privileged, that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1).  Thus, the scope of discovery under Rule 26 is broad.  Discovery may be sought of relevant information not admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  *Id.*

Rule 26 also provides a mechanism for the court to issue an order protecting a party from annoyance, embarrassment, oppression, and undue burden or expense including "that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters." Fed. R. Civ. P. 26(c)(4).  The order may be issued for good cause shown.  *Id.*  "In determining whether good cause exists for the protective order, the Court must balance the interests in allowing discovery against the relative burdens to the parties and nonparties." *Quair v. Bega*, 232 F.R.D. 638, 641 (E.D. Cal. 2005).

**C.    Speech or Debate Privilege - U.S. Const. Art. I, § 6, cl. 1.**

The Speech or Debate Clause of the United States Constitution provides: "For any Speech or Debate in either House [Senators and Representatives] shall not be questioned in any other Place."  U.S. Const. Art. I, § 6, cl. 1.  The privilege protects speech and other activities undertaken

by members of Congress who are acting within a legitimate legislative sphere. *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502-503 (1975). The legislative sphere includes those activities that: (1) are an integral part of the deliberative and communicative processes by which Members participate in House proceedings and (2) address proposed legislation. *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 529 (9th Cir. 1983); *see also United States v. Gravel,* 408 U.S. 606, 617 (1972) ("[T]he Court's consistent approach has been that to confine the protection of the Speech or Debate Clause to words spoken in debate would be an unacceptably narrow view. Committee reports, resolutions, and the act of voting are equally covered....")

In addition, the Speech or Debate clause precludes inquiry into the motivation or purposes of a legislative act. *U.S. v. Brewster,* 408 U.S. 501, 525 (1972)("[T]he Speech or Debate Clause protects against inquiry into the acts that occur in the regular course of the legislative process and into the motivation for those acts.")

The privilege afforded under the Speech or Debate Clause has been applied to both criminal and civil contexts. *See Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502 (1975) ("The applicability of the Clause to private civil actions is supported by the absoluteness of the terms 'shall not be questioned,' and the sweep of the term 'in any other Place.' . . . Just as a criminal prosecution infringes upon the independence which the Clause is designed to preserve, a private civil action, whether for an injunction or damages, creates a distraction and forces Members to divert their time, energy, and attention from their legislative tasks to defend the litigation. Private civil actions also may be used to delay and disrupt the legislative function. Moreover, whether a criminal action is instituted by the Executive Branch, or a civil action is brought by private parties, judicial power is still brought to bear on Members of Congress and legislative independence is imperiled.").

In light of the demands and pace of the modern legislative process, as well as the "critical" role aides play in assisting Members with legislative tasks, the Supreme Court extended the scope of the Speech or Debate Clause to a Member's aides or assistants in *United States v. Gravel,* 408 U.S. 606, 617-618 (1972) ("[T]hat the day-to-day work of such aides is so critical to the Members' performance that they must be treated as the latter's alter egos; and that if they are not so recognized, the central role of the Speech or Debate Clause - to prevent intimidation of legislators by the

1    Executive and accountability before a possibly hostile judiciary- will inevitably be diminished and

2    frustrated.")(citations omitted).  Accordingly, the Supreme Court in *Gravel* forbade the questioning

3    of a Senator's assistant: "(1) concerning the Senator's conduct, or the conduct of his aides, at the .

4    . . meeting of the subcommittee; (2) concerning the motives and purposes behind the Senator's

5    conduct, or that of his aides at the meeting; (3) concerning communications between the Senator and

6    his aides during the term of their employment and related to said meeting or any other legislative

7    act of the Senator; [and] (4) . . . concerning any act, in itself, not criminal, performed by the Senator,

8    or by his aides in the course of their employment, in preparation for the subcommittee hearing." *Id.*

9    at 628-629.

10                                          **V.  DISCUSSION**

11   **A.      The Speech or Debate Clause Privilege as well as Relevance Concerns Prevent JWV**

12           **Plaintiffs From Taking Mr. LiMandri's Deposition.**

13           The Court has previously ruled, and case law expounding on the scope of the Speech or

14   Debate Clause makes clear, that an inquiry into the Congressman's motivation behind legislation

15   is impermissible.  [Doc. No. 106, p. 6, ln.18-21.]  *U.S. v. Brewster,* 408 U.S. 501, 525 (1972)*;*

16   *see also City of Las Vegas v. Foley*, 747 F.2d 1294, 1297 (9th Cir. 1984) (citing *Michael M. v.*

17   *Superior Court*, 450 U.S. 464, 469-70 (1981).

18           Case law addressing the propriety of questioning third-parties concerning potentially

19   Speech or Debate Clause privileged activities of a member is sparse and varied between circuits.

20   In *Tavoulareas v. Piro*, 93 F.R.D.11 (D.C.D.C. 1981), the United States District Court for the

21   District of Columbia held that while non-party congressional staffers could not be questioned

22   about the motivations behind their congressional investigations, they could be deposed

23   concerning the motivations of Washington Post reporters in bringing the matters to be

24   investigated to the attention of congressional staff.  *Id.* at 19; *see also Tavoulareas v. Piro*, 527

25   F.Supp. 676, 680 (D.C.D.C. 1981) ("In sum, the Court will order congressional deponents to

26   answer any questions pertaining to the voluntary submission (as opposed to acquisition) of

27   information to congressional staff by reporters or by other sources.")  This position is what the

28   JWV Plaintiffs advocate.

1    However, the Ninth Circuit in *Miller v. Transamerican Press, Inc.*, 709 F.2d 524 (9th Cir.

2    1983) disagreed with the *Tavoulareas* court's allowance of questions concerning

3    communications initiated by noncongressional sources, finding: (1) practical difficulty with

4    separating the acts of a noncongressional source from the responsive communication of

5    congressional staff, and (2) intrusion into realms protected by the Speech or Debate Clause in

6    that a congressman's active or passive role in legislation would necessarily be revealed in

7    response to such questions. *Id*. at 530.  Accordingly, the Ninth Circuit held the Speech or

8    Debate Clause prevented questioning of a non-party, former Congressman about his sources of

9    information. *Id*. ("Obtaining information pertinent to potential legislation or investigation is one

10   of the "things generally done in a session of the House," *Kilbourn v. Thompson*, 103 U.S. 168,

11   204 (1957), concerning matters within the "legitimate legislative sphere," *Eastland v. United*

12   *States Servicemen's Fund*, 421 U.S. 491, 503 (1975).  Constituents may provide data to

13   document their views when urging the Congressman to initiate or support some legislative

14   action.")

15         The JWV Plaintiffs were forthright in admitting they wanted to depose Mr. LiMandri, in

16   part, to determine the motivations, purpose and strategies behind the Congressmen's legislative

17   activities and decisions concerning the Mt. Soledad cross.  Unable to depose the Congressmen in

18   light of the Court's April 2, 2007 ruling, the JWV Plaintiffs seek an end-around by deposing Mr.

19   LiMandri to discover the same information they sought directly through the previously

20   prohibited depositions.   Clearly, the Congressman's active or passive role in legislation would

21   necessarily be revealed in response to such questions.  Further, although Mr. LiMandri was not a

22   paid staff member of any of the three Congressmen, it is unquestioned that he served as an

23   advisor to them with respective to then prospective legislative matters.  This situation is

24   precisely the situation contemplated by *Miller* when the Ninth Circuit discussed the practical

25   difficulty of separating the acts of a noncongressional source from the responsive

26   communication of congressional staff.  In addition, it is clear to this Court that permitting the

27   deposition of Mr. LiMandri would produce a harmful chilling effect on the right of federal

28   legislators to gather information and consult with paid or non-paid advisors with regard to

1    prospective legislative activities and decisions.  Such a deposition would constitute an

2    unwarranted intrusion into matters protected by the Speech or Debate Clause which the Ninth

3    Circuit says is improper.

4          Given the Ninth Circuit's careful attention in *Miller* to protecting against the use of

5    circuitous routes to delve into areas privileged by the Speech or Debate Clause, this Court

6    **GRANTS** Mr. LiMandri's motion to quash and for protective order and specifically precludes

7    JWV Plaintiffs from asking Mr. LiMandri about Congressman's Hunter's legislative motivations

8    or activities.  Moreover, even if JWV Plaintiffs could circumvent this Court's April 2, 2007

9    Order by deposing Mr. LiMandri concerning Congressman Hunter's motivations, which it

10   cannot, such testimony would be irrelevant to the District Court's analysis under the *Lemon* test .

11    *Edwards v. Aguillard,* 482 U.S. 578 at 594-595, *see also McCreary vs. ACLU,* 545 U.S. 844,

12   862 (2005); [Doc. No. 106, p. 7, ln. 26 - p. 8, ln. 6.]  If the motivations of actual representatives

13   are irrelevant to an Establishment Clause inquiry then a private person's interests in, motivations

14   behind or activities in support of H.R. 5683 are equally irrelevant.

15         JWV Plaintiffs' contention that a deposition of Mr. LiMandri is needed to advance their

16   case with respect to the informed, reasonable observer standard under the effect prong of the

17   *Lemon* test is untenable given JWV Plaintiffs acknowledgment of Mr. LiMandri's decidedly

18   partisan involvement in the issues concerning the Mt. Soledad memorial.  [*See* Doc. No. 153,

19   1:17-21, ("Charles LiMandri is the West Coast Regional Director of the Thomas More Law

20   Center, an advocacy group whose stated mission, as set forth on its website, is the 'promotion of

21   the religious freedom of Christians' and the protection of 'Christians and their religious beliefs in

22   the public square'");  Doc. No. 153, 2:13-15, ("Mr. LiMandri wrote that [designating the Cross

23   as a national war memorial] was necessary because 'religion and morality are the foundation of

24   our country' and the Cross is 'one of the most visible . . . symbols of [our Christian faith.]'");

25   Doc. No. 153, 31-2 , ("Mr. LiMandri later praised Rep. Cunningham's efforts as 'an act of

26   God.'")]  The Supreme Court's discussion in *McCreary* of the hypothetical reasonable observer

27   makes clear that while such an observer is familiar with the history of the government action at

28   issue, the observer is also objective.  *See McCreary County, Kentucky v. Am. Civil Liberties*

1   *Union of Kentucky*, 545 U.S. 844, 866 (2005) (quoting *Santa Fe Independent School Dist.  v.*

2   *Doe*, 530 U.S. 290, 308 ("objective observer is familiar with 'implementation of government

3   action'.")  JWV Plaintiffs' briefs show that even they recognize that Mr. LiMandri does not fit

4   the mold of an *objective* observer.  Any testimony Mr. LiMandri may therefore have regarding

5   his observations of the memorial are unhelpful and irrelevant to the *Lemon* test's effect prong.

6   **B.    Mr. LiMandri Has Shown Good Cause Exists To Safeguard The Attorney-Client**

7   **Privilege By Barring His Deposition On All Subjects Including Historical Issues**

8   **Which Would At Best Produce Duplicative Information.**

9   As explained in the Court's April 2, 2007 Order, the courts look to several objective

10  factors to determine whether a state statute violates the Establishment Clause, including, but not

11  limited to: (1) legislative history; (2) the plain meaning of a statute's words; (3) the historical

12  context of the statute; and (4) the specific sequence of events leading to passage of the statute.

13  *Edwards vs. Aguillard,* 482 U.S. 578, 594-595 (1987).

14  JWV Plaintiffs contend that there is a need to depose Mr. LiMandri regarding the events

15  leading up to the passage of the statute and its historical context.  *See* Fed. R. Civ. P. 26(b)(1).

16  While these two categories are acceptable subjects of inquiry, Mr. LiMandri has shown good

17  cause exists under Rule 26 and Rule 45 to issue a protective order preventing his deposition for

18  all purposes.  Mr. LiMandri has served as an attorney for many years for several clients involved

19  in a variety of legal issues surrounding the Mt. Soledad Veterans Memorial, including the City of

20  San Diego.[1]  *See* LiMandri Decl., paras. 5, 8, 9, and 11.; *see* Fed. R. Civ. P. 45(c)(3)(A)(iii)

21  (stating that the Court may quash a deposition subpoena if it "requires disclosure of privileged or

22  other protected matter").  Even if JWV Plaintiffs' counsel were able to craft a few relevant and

23  meaningful deposition questions that did not run afoul of the timing of Mr. LiMandri's attorney-

24  client relationships and their attendant privileges (and the Court does not think such a feat is

25  possible), the extremely limited amount of historical information JWV Plaintiffs might acquire

26  does not tip the balance in favor of allowing Mr. LiMandri's deposition.  *Quair v. Bega*, 232

27  F.R.D. 638, 641 (E.D. Cal. 2005) ("In determining whether good cause exists for the protective

28  _____

[1]   As an example, the California Court of Appeal acknowledged attorney LiMandri's role in representing the City of San Diego in *Paulson v. Abdelnour*, 145 Cal. App. 4th 400 (2006).

1 | order, the Court must balance the interests in allowing discovery against the relative burdens to

2 | the parties and nonparties."); *see* Fed. R. Civ. P. 26(c)(4).  JWV Plaintiffs have a wealth of

3 | historical and contextual information from other documentary and testimonial sources as

4 | demonstrated by the instant motion and as attested to by counsel for JWV Plaintiffs at oral

5 | argument.  [Doc. No. 153, 1:17-5:23.]  The minimal benefit that would be derived from allowing

6 | JWV Plaintiffs to depose Mr. Limandri for the supposed purpose of gleaning cumulative

7 | historical information is outweighed by the need to respect the attorney-client privilege, prevent

8 | unreasonably duplicative discovery and protect against annoyance and undue burden.  Fed. R.

9 | Civ. P. 26.  Accordingly, this Court **GRANTS** Mr. LiMandri's motion to quash and for

10 | protective order.

### VI.  CONCLUSION AND ORDER THEREON

In light of the foregoing, non-party Charles LiMandri's Motion to Quash and for Protective Order is **GRANTED.**

**IT IS SO ORDERED**.

DATED: September 13, 2007

_____
Hon. William McCurine, Jr.
U.S. Magistrate Judge, U.S. District Court

COPY TO:
HONORABLE LARRY A. BURNS, U.S. DISTRICT JUDGE
ALL PARTIES AND COUNSEL OF RECORD

12

06cv1597 / 06cv1728 LAB (WMc)