# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE TRUNK and PHILIP K. PAULSON,<br><br>                     Plaintiffs,<br>vs.<br><br>CITY OF SAN DIEGO, UNITED STATES OF AMERICA, DONALD H. RUMSFELD, Secretary of Defense and DOES 1 through 100, inclusive,<br><br>                     Defendants.<br>_____<br>MOUNT SOLEDAD MEMORIAL ASSOCIATION,<br><br>                     Real Parties in Interest.<br>_____<br>JEWISH WAR VETERANS OF THE UNITED STATES OF AMERICA, INC., RICHARD A. SMITH, MINA SAGHEB, and JUDITH M. COPELAND,<br><br>                     Plaintiffs,<br>vs.<br><br>DONALD H. RUMSFELD, Secretary of Defense, in his official capacity,<br><br>                     Defendant. | CASE NO. 06cv1597-LAB (WMc)<br>(Consol. w/06cv1728-LAB (WMc)<br><br>**ORDER OVERRULING PLAINTIFF SMITH'S OBJECTION TO ORDER GRANTING NON-PARTY CHARLES LIMANDRI'S MOTION TO QUASH AND FOR PROTECTIVE ORDER**<br><br>[Dkt. No. 172.] |

On July 16, 2007, non-Party Charles LiMandri ("LiMandri") filed a motion to quash and for a protective order regarding a deposition subpoena and notice served on him by counsel for, collectively, Jewish War Veterans of the United States of America, Inc., Richard A. Smith, Mina Sagheb, and Judith M. Copeland (the "JWV Plaintiffs"). LiMandri, a San Diego attorney, was active in seeking government action to have the property at issue in this case transferred from the City of San Diego (the "City") to the federal government, and who also advised members of Congress regarding proposed legislation.

LiMandri sought to quash the subpoena, citing, among other authorities, Fed. R. Civ. P. 45(c)(3), which provides that on motion by a person served with a subpoena, a court will quash or modify the subpoena if it requires disclosure of privileged or protected matters, or subjects the person to undue burden. LiMandri also cited Fed. R. Civ. P. 26(b)'s provisions for the protection of persons from whom discovery is sought.

On September 13, 2007, Magistrate Judge McCurine, to whom discovery had been referred, after briefing and oral argument, granted LiMandri's motion. Ten court days later, the JWV Plaintiffs filed objections to Judge McCurine's order, and requested oral argument. Fed. R. Civ. P. 72 provides for the filing of objections to a magistrate judge's ruling on a non-dispositive matter, but neither this rule, nor the Magistrates Act, 28 U.S.C. § 636, contains "specific procedures or timetables for raising objections to the magistrate's rulings on nondispositive matters." Fed. R. Civ. P. 72(a) advisory committee's note. Paragraph 9(a) of Court's own standing order, however, provides that, upon receipt of objections to non-dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B), the Court will set a briefing schedule and set a hearing date, if appropriate. The Court has considered the JWV Plaintiffs' lengthy objections, however, and finds no additional briefing or oral argument is necessary or appropriate.

Plaintiffs previously sought, and were denied, an order compelling the depositions of San Diego Mayor Jerry Sanders and U.S. Representative Duncan Hunter (Order of April 2, 2007).

/ / /

## I. Legal Standards

Pursuant to Fed. R. Civ. P. 72(a), aggrieved parties may, within ten days, file objections to the rulings of a magistrate judge in non-dispositive matters. Such objections are sustained if the magistrate judge's order is "found to be clearly erroneous or contrary to law." Therefore, the standard applied in a review of a discovery matter such as this is the "clearly erroneous or contrary to law" standard. *Haines v. Liggett Group Inc.*, 975 F.2d 81, 92 (3d Cir. 1992) (noting that the proper standard for review of discovery orders is the "clearly erroneous or contrary to law" standard).

The "clearly erroneous" standard applies to the magistrate judge's findings of fact; legal conclusions are freely reviewable *de novo* to determine whether they are contrary to law. *Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 422 (1999). Discretionary orders, including orders denying discovery, will be overturned only if the district court is left with the definite and firm conviction that a mistake has been made. *Center for Biological Diversity v. Federal Highway Admin.*, 290 F. Supp.2d 1175, 1199–1200 (S.D.Cal. 2003) (quoting *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997)).

## II. Discussion

The JWV Plaintiffs contend Judge McCurine's order erred in three respects, arguing: 1) Judge McCurine erroneously required the information sought to be relevant, whereas the standard they urge is "that discovery need only be calculated to lead to relevant evidence"; 2) Judge McCurine erroneously relied on the U.S. Constitution's Speech or Debate clause; and 3) Judge McCurine erroneously relied on attorney-client privilege. In the case of the latter two, the JWV Plaintiff contend that, even if some areas of inquiry might have been precluded, not all relevant areas would have been. (Obj. at 13:13–17:4.)

The JWV Plaintiffs identify LiMandri's advocacy, lobbying, and advisory efforts as the basis for the deposition. (Obj. at 2:1–6:17; *see also id.* at 6:19–22 ("In light of Mr. LiMandri's ubiquity in the series of events that led to the transfer of title to the United States and its continued display, Plaintiffs served a deposition subpoena on him on July 6, 2007.")) They represent they do not seek information regarding the motivations of members of Congress

in enacting Public Law 109-272 (*id.* at 8:9–17), but rather about Congressional purpose. (*Id.* at 8:19–25.) In support of this, they cite a recently issued memorandum opinion compelling the production of certain documents by the members of Congress who sponsored Public Law 109-272, *Jewish War Veterans of the U.S., Inc. v. Gates*, ___ F. Supp.2d ___, 2007 WL 2702012, slip op. at *27–*28 (D.D.C., Sept. 18, 2007) ("*JWV v. Gates*").

### A. Relevance Inquiry

The land at issue was taken and designated as a veterans' memorial by Public Law 109-272. Previous litigation of the issues presented here has established the fact that the transfer of land at issue here was accomplished unilaterally by legislative action of the federal government, without any required involvement by the City of San Diego. *Paulson v. City of San Diego*, 475 F.3d 1047, 1048–49 (9th Cir. 2007). The Ninth Circuit has also made clear that any lobbying action cannot, from a legal standpoint, be viewed as "causing" the legislation that resulted in the transfer of land. *Id.* (quoting *Chem. Producers & Distribs. Ass'n v. Helliker*, 463 F.3d 871, 879 (9th Cir. 2006)). Therefore, whatever Constitutional violation may have occurred was accomplished solely by the federal government, without regard for any action by the City or any lobbying action by LiMandri or any other person or entity. The relevance in this case of anything the City may have done is therefore minimized.

Furthermore, the City's involvement in this controversy has been the subject of extensive and well-publicized litigation. It thus appears little, if any, relevant evidence regarding the City's role in this controversy remains to be unearthed. As Judge McCurine's order recognized, the JWV Plaintiffs are already in possession of a large amount of historical and contextual information, and have little need for the small amount they might obtain as a result of deposing LiMandri. (Order of Sept. 13, 2007, at 12:2–8.)

As for the federal government's activities, the JWV Plaintiffs first focus on LiMandri's contact with Public Law 109-272's lead sponsors, U.S. Representatives Hunter, Bilbray, and Issa. They cite *JWV v. Gates* as their sole authority for the principle that "the activities of the lead sponsors of the legislation" are uniquely relevant. (Obj. at 9:1–9 (citing *JWV v. Gates*,

1  2007 WL 2702012, slip op. at *18).) That ruling, however, dealt with the question of whether
2  documents in the possession of Public Law 109-272's lead sponsors, Reps. Hunter, Bilbray,
3  and Issa, might be relevant. As that court explained, the lead sponsors could reasonably
4  expect their actions and communications would be scrutinized, 2007 WL 2702012, slip op.
5  at *18, and the documents they could provide might be uniquely valuable. While the Court
6  recognizes documents in the possession of members of Congress might constitute, or lead
7  to the discovery of, relevant evidence, the same cannot be said for any anecdotal non-
8  privileged information LiMandri might provide about those members of Congress, or about
9  any other federal officials, or their activities.

10  Second, the JWV Plaintiffs also argue they wish to uncover LiMandri's own "interests
11  in, motivations behind or activities in support of" Public Law 109-272, contending "this inquiry
12  is highly relevant to the Establishment Clause determination." (Obj. at 9:11–18; *but see id.*
13  at 12:6–19 (recognizing LiMandri's feelings about the cross are irrelevant).) In support of
14  this, they cite *McCreary County, Ky. v. American Civil Liberties Union of Ky.*, 545 U.S. 844,
15  862 (2005) and *Edwards v. Aguillard*, 482 U.S. 578, 594–95 (1987). These authorities do
16  not, however, stand for the principle that the actions of private activists are particularly
17  relevant to the inquiry of legislative purpose. In explaining that the "specific sequence of
18  events leading up the challenged decision . . . may shed some light on the decisionmaker's
19  purposes," these cases focus on events tending to show the officials' own purposes, not the
20  purposes of outsiders such as LiMandri.

21  Third, the JWV Plaintiffs argue information they might uncover during the deposition
22  of LiMandri will likely lead to other relevant and admissible information. (Obj. at 10:16–11:3.)
23  They base this argument on their observation that "LiMandri has interacted extensively with
24  every governmental actor responsible for the continued presence of the Cross atop Mt.
25  Soledad and its transfer to federal control . . . ." (*Id.* at 11:1–2.)

26  In connection with their relevance argument, the JWV Plaintiffs focus primarily on
27  LiMandri's public activism and his interaction with the City and with members of Congress.
28  As noted, inquiry into non-privileged matters in this regard is not reasonably likely to lead to

1 | relevant and admissible evidence. The JWV Plaintiffs also mention officials in the Executive
2 | Branch but, with the exception of LiMandri's presence at the signing of Public Law 109-272
3 | by President Bush, only in terms of LiMandri's correspondence with them. (Obj. at 3:8–12
4 | (discussing letter to President Bush); 5:5–21 (discussing letter to President Bush and
5 | correspondence with other Executive Branch officials); 6:12–18 (mentioning LiMandri's
6 | presence at the Oval Office signing ceremony and his statements to the press afterwards).)
7 | The JWV Plaintiffs' citations make plain they are in possession of these pieces of
8 | correspondence. Although the JWV Plaintiffs in other sections mention in passing
9 | LiMandri's communications with Executive Branch officials and agencies (*id.* at 9:26–10:4;
10 | 15:11–12), they have not shown a deposition of LiMandri would be reasonably calculated
11 | to uncover relevant, admissible evidence regarding President Bush's role in enacting this
12 | legislation.

13 | The JWV Plaintiffs repeatedly mention LiMandri's own activism and the advocacy
14 | efforts of the Thomas More Law Center, for which LiMandri serves as West Coast Regional
15 | Director, apparently suggesting these may be important areas of inquiry at the deposition.
16 | (Obj. at 2:2–23, 5:1–7; *see also id.* at 12:19–23 (". . . JWV Plaintiffs seek to depose Mr.
17 | LiMandri because his communications and activities comprise a key part of the context that
18 | determines the effect of the government's actions upon a reasonable observer.")

19 | The Supreme Court has explained that, as part of the inquiry into the Constitutionality
20 | of religious symbols on public land, the point of view of a "reasonable observer" should be
21 | considered. *McCreary County*, 545 U.S. at 866 (citing *Capitol Square Review and Advisory*
22 | *Bd. v. Pinette*, 515 U.S. 753, 780 (1995) (O'CONNOR, J., concurring in part and concurring
23 | in judgment) ("[T]he reasonable observer in the endorsement inquiry must be deemed aware
24 | of the history and context of the community and forum in which the religious display
25 | appears.")) A reasonable observer is considered to be aware of such facts as the ownership
26 | of the land and the efforts of the government to maintain the symbol on it. *Pinette* at
27 | 780–81; *Buono v. Kempthorne*, ___ F.3d ____, 2007 WL 2493512, slip op. at *14 (9th Cir.
28 | Sept. 6, 2007).

The JWV Plaintiffs have not, however, cited any authority, nor is the Court aware of any, for the principle that a reasonable observer would take into account the views of various citizens or advocacy groups with no power to control the land or what was done with it. Furthermore, a "reasonable observer" cannot be expected to be aware of private information the JWV Plaintiffs believe has not yet come to light.

At the outside, Rule 26(b) provides that relevant information should "appear[ ] reasonably calculated to lead to the discovery of admissible evidence." While there is some chance the deposition of LiMandri might eventually lead to admissible evidence, the JWV Plaintiffs have not shown that information revealed in the deposition would be "reasonably calculated" to do so. Accordingly, the Court holds the deposition of LiMandri is not reasonably calculated to lead to the discovery of relevant, admissible evidence.

### B.  Speech or Debate Clause, Attorney-Client Privilege

The JWV Plaintiffs have also briefed the Speech or Debate Clause and attorney-client privilege issues. While they concede these would limit the scope of the deposition, they contend some lines of questioning would still be permissible. Judge McCurine, by contrast, specifically pointed out the paucity of available lines of questioning:

> Even if JWV Plaintiffs' counsel were able to craft a few relevant and meaningful deposition questions that did not run afoul of the timing of Mr. LiMandri's attorney-client relationships and their attendant privileges (and the Court does not think such a feat is possible), the extremely limited amount of historical information JWV Plaintiffs might acquire does not tip the balance in favor of allowing Mr. LiMandri's deposition.

(Order of Sept. 13, 2007, at 11:22–26.)

The JWV Plaintiffs were thus put on notice that it was doubtful they had any meaningful questions to ask at the deposition. Even so, they did not rebut this by providing satisfactory examples of specific questions or areas of inquiry. The examples they provide of possible areas for questioning are, for the most part, either vague or irrelevant. (Obj. at 14:1–5 (arguing the Speech or Debate Clause does not bar questioning LiMandri about "his own direct contacts with the White House, his interactions with federal agencies, and his efforts in San Diego"); 15:7–12 (listing, as examples of matters not subject to attorney-client

privilege, LiMandri's involvement with Proposition K, his efforts to lobby Reps. Cunningham, Hunter, and Issa, and "his interactions with the White House and federal agencies").)

The JWV Plaintiffs incorporate by reference thirteen pages of their opposition to the motion to quash, without citing any particular portion of that discussion. (Obj. at 13:9–10 (citing Opp'n at 15–28).) This provides the only specific example of a potentially valuable area of questioning not covered by the Speech or Debate Clause, namely, the efforts by members of Congress to influence Executive Branch officials to use existing legal authority to acquire the land at issue. (Opp'n at 26:3–6.) However, even this area of inquiry is tangential, because the land was acquired through legislative action, not the hypothetical method mentioned there. The only specific information mentioned as being outside the protection of the Speech or Debate Clause and not subject to attorney-client privilege is therefore only marginally relevant. The only potentially relevant information the JWV Plaintiffs might uncover is historical background which, Judge McCurine found, the JWV Plaintiffs already have in abundance. (Order of Sept. 13, 2007, at 11:22–26, 12:2:5.)

The Court's examination of the relevance of the information sought makes clear the Court need not reach the Speech or Debate Clause or attorney-client privilege issues. Nevertheless, out of an abundance of caution the Court has reviewed Judge McCurine's Speech or Debate and attorney-client privilege analysis and finds it not contrary to law.

**C.     Additional Considerations**

**1. Protection of Non-Party**

As a non-party, LiMandri is entitled to broader protection under Rule 26(c). *Dart Indus. Co. v. Westwood Chemical Co.*, 649 F.2d 646, 649 (9th Cir. 1980). The Court is obliged to weigh the burden to LiMandri against the value of potential information to the JWV Plaintiffs, considering other possible sources of information. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637–38 (C.D.Cal. 2005) (citations omitted).

Judge McCurine found the JWV Plaintiffs "have a wealth of historical and contextual information from other documentary and testimonial sources as demonstrated by the instant motion and as attested to by counsel for JWV Plaintiffs at oral argument." (Order of Sept.

13, 2007, at 12:2–5.) Judge McCurine therefore concluded any historical information LiMandri might provide would be cumulative. The JWV Plaintiffs have not shown this finding to be clearly erroneous.

As noted, LiMandri has been a prominent advocate of efforts to preserve the existing cross on Mt. Soledad, whose removal they now seek. LiMandri was also counsel for San Diegans for the Mt. Soledad National War Memorial in a related state case, *Paulson v. Abdelnour*, 145 Cal.App.4th 400 (Cal.App. 4 Dist. 2006), in which the City's donation of the land to the federal government was challenged. In that case, LiMandri's client's party opponent was the former co-Plaintiff Paulson (now deceased), who was represented by the same counsel as is Plaintiff Trunk. In both litigation and politics, LiMandri has been on the opposite side of this controversy from Plaintiffs, and as they make clear, he has been one of their most active opponents.

Judge McCurine's order quashing the subpoena relied in part on Fed. R. Civ. P. 26(c)(4)'s provisions to protect persons from annoyance, embarrassment, oppression, and undue burden or expense. (Order of Sept. 13, 2007, at 6:18–24, 12:8.) As part of its Speech or Debate clause analysis, the order also found LiMandri had served as an advisor to the three members of Congress (*id.* at 9:21–23), and mentioned the importance of protecting legislators and their aides or assistants from intimidation. (*Id.* at 7:13–8:9.) In this type of situation, the Court must be particularly vigilant to accord non-party activists and political opponents such as LiMandri the broad protection the Ninth Circuit has held they are entitled to, to prevent the possible misuse of deposition subpoenas as tools of oppression, intimidation, or harassment.

While Judge McCurine did not expressly find the deposition subpoena was issued for an improper purpose, his order suggests this was a consideration in his decision to quash the subpoena. (Order of Sept. 13, 2007, at 12:5–8 ("The minimal benefit that would be derived from allowing JWV Plaintiffs to depose Mr. Limandri for the supposed purpose of gleaning cumulative historical information would is outweighed by the need to . . . protect against annoyance and undue burden."))

### 2. Reconsideration of the Court's Own Order

It is also worth noting that this Court has previously denied Plaintiffs' request for an order compelling the deposition of Rep. Hunter, explaining that such a deposition was barred by the Speech or Debate Clause, and also that the anticipated testimony would be irrelevant. The JWV Plaintiffs repeatedly cite *JWV v. Gates* for its analysis of relevance. That opinion, however, after much analysis, consciously declined to consider this Court's order preclusive. 2007 WL 2702012, slip op. at *6–*9. While this Court does not disagree with the analysis set forth there, the order of April 2, 2007 is this Court's own order. The JWV Plaintiffs' objections, in this sense, represent either very late objections to the Court's order, or else a request to this Court for reconsideration.

While this Court has discretion to reconsider its own decision at any time, *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888–89 (9th Cir. 2001), the JWV Plaintiffs have not given the Court any adequate reason to do so. Rather, as Judge McCurine correctly pointed out, they are attempting to circumvent that order. (Order Quashing LiMandri Subpoena, at 9:17–20.) The JWV Plaintiffs had a full and fair opportunity to litigate the issue of whether a deposition of Rep. Hunter was proper, *JWV v. Gates*, 2007 WL 2702012, slip op. at *6, but did not challenge it then. To the extent the JWV Plaintiffs now seek information about Reps. Hunter, Bilbray, and Issa, to whom LiMandri served as an advisor, deposing LiMandri would be equivalent to deposing those Representatives. *See United States v. Gravel*, 408 U.S. 606, 617–18 (1972) (reasoning that implementing the Speech or Debate Clause's protections required application of those protections not only to members of Congress, but to their aides as well). *See also Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 529-030 (9th Cir. 1983) (examining the breadth of the Speech or Debate privilege, and specifically noting questions about the motive for or purpose of legislative acts are proscribed).

### III. Conclusion and Order

In sum, the information the JWV Plaintiffs might uncover by deposing LiMandri is of minimal value. LiMandri's own private activism and beliefs are irrelevant to this case. His

interaction at the municipal level is of only marginal relevance and in any event the City's involvement in this controversy is well documented.  His interaction with members of the Executive branch, according to the JWV Plaintiffs' representations, consisted for the most part of correspondence, of which the JWV Plaintiffs have copies.  And his interaction with members of Congress is curtailed as an area of inquiry by both the Speech or Debate clause and attorney-client privilege to the point where any additional relevant information the deposition might lead to would be cumulative. Though Judge McCurine's order pointed out the limited character of any questions the JWV Plaintiffs might be able to ask at the deposition, they have not attempted to provide any specific lines of questioning they might pursue at the deposition that are reasonably calculated to lead to admissible evidence.

In addition, the potential for improper use of the deposition, and the absence of any reason to reconsider the Court's own previous ruling counsel against sustaining the JWV Plaintiffs' objections.

For these reasons, the JWV Plaintiffs' objections to Judge McCurine's order of September 13, 2007 are hereby **OVERRULED**.

**IT IS SO ORDERED**.

DATED: October 10, 2007

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge