# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE TRUNK,<br><br>             Plaintiff,<br><br>vs. | CASE NO. 06cv1597-LAB (WMc)<br>(Consol. w/06cv1728-LAB (WMc)<br><br>**ORDER GRANTING MOUNT SOLEDAD MEMORIAL ASSOCIATION'S MOTION TO INTERVENE; AND**<br><br>**ORDER DENYING MOTION BY SAN DIEGANS FOR THE MT. SOLEDAD MEMORIAL TO INTERVENE; AND**<br><br>**ORDER GRANTING LEAVE TO PROCEED AS *AMICI CURIAE***<br><br>**[DOCKET NOS. 314, 315, 316, 317.]** |

| | |
|---|---|
| 1<br>2<br>3 | CITY OF SAN DIEGO, UNITED STATES OF AMERICA, ROBERT M. GATES, Secretary of Defense and DOES 1 through 100, inclusive, |
| 4 | Defendants.<br>_____ |
| 5<br>6 | MOUNT SOLEDAD MEMORIAL ASSOCIATION, |
| 7 | Real Parties in Interest.<br>_____ |
| 8<br>9<br>10 | JEWISH WAR VETERANS OF THE UNITED STATES OF AMERICA, INC., RICHARD A. SMITH, MINA SAGHEB, and JUDITH M. COPELAND, |
| 11 | Plaintiffs, |
| 12 | vs. |
| 13 | LEON PANETTA, Secretary of Defense, in his official capacity, |
| 14 | Defendant. |

Two motions to intervene are pending before the Court: one brought by the Mount Soledad Memorial Association (MSMA) (Docket no. 315); and a second brought by the organization San Diegans for the Mt. Soledad National War Memorial ("San Diegans for the Memorial") (Docket no. 316). Originally two members of Congress, Reps. Brian Bilbray and Duncan Hunter,[1] filed a motion to intervene (Docket no. 314), but they then withdrew their request to intervene and sought only leave to appear as *amici curiae*. (Docket no. 317.) The MSMA's motion primarily seeks to clarify that it is already a Defendant, but in the alternative seeks to intervene. The United States consents to the participation of all three as *amici*, does not oppose the MSMA's permissive intervention, but does oppose intervention by San Diegans for the Memorial.

---

[1] A separate group of thirty-three other U.S. Representatives were given leave to, and did, file a brief as *amici curiae*, but Reps. Bilbray and Hunter were not part of this group.

The Court held a hearing on the motions on October 19, 2012 and announced its tentative rulings. This written order memorializes and supplements the Court's findings and orders at the hearing.

**Legal Standards**

Under Fed. R. Civ. P. 24(a)(2), a person may intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." This is referred to as intervention of right. The Court construes this provision liberally in favor of potential intervenors, focusing on practical considerations rather than technical distinctions. *Southwest Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 817 (9th Cir. 2001). A person or entity seeking to intervene by right must meet four requirements:

> (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties.

*Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). The proposed intervenor bears the burden of showing that all four requirements are met. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

Rule 24(b)(1) provides for permissive intervention. A prospective intervenor under this section must show: "(1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 411 (9th Cir. 1998).

**Discussion**

The Court first notes that the motions to intervene were filed promptly after the proposed intervenors learned that the MSMA's standing was being questioned, and that the government was pursuing or considering settlement options.

///

Timeliness is measured by reference to "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for the length of the delay." *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (quoting *County of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986)). There is a legal presumption that the government's representation in a matter of shared interest will be adequate, *see id.*, and initially both the MSMA and San Diegans for the Memorial assumed this to be so. It was only later, after an appeal was filed, that both organizations began to believe the government representation might not be adequate. Those reasons are discussed below. Under circumstances such as these, a motion to intervene is timely even if filed later in the litigation, provided the proposed intervenors file their motion in a timely manner once on notice the government representation is inadequate. *Id*. at 1125–26. Here, the Court concludes the motions were timely filed.

It also bears mentioning that neither the proposed intervenors nor the Court can adopt a wait-and-see attitude. A later motion by either the MSMA or San Diegans for the Memorial seeking leave to intervene would very likely be untimely.

**The MSMA**

The MSMA contends it was initially named as a Defendant, and points out that it filed an answer to the First Amended Complaint. It asks the Court to clarify its status. Although paragraph 9 of the First Amended Complaint did characterize the MSMA as a Defendant, the caption of the complaint named the MSMA only as a "Real Party in Interest." Then, when the MSMA attempted to file briefing on appeal, Plaintiff sought to block their filing. The Ninth Circuit rejected Plaintiff's effort, and the MSMA ultimately participated as a party to the appeal. These past conflicts leave the MSMA's status in some doubt.

The MSMA is a secular organization formed in 1952, and was responsible for building the memorial and making changes to how it now exists. It has assumed responsibility for administering and maintaining the memorial, both while the property was owned by the City of San Diego, and also under federal ownership. The MSMA is differently situated than San Diegans for the Memorial because the statute creating the memorial recognizes the MSMA's

1  unique place and specifically provides a role for it to maintain the memorial. *See* Pub. L.
2  109-272, § 2(c) ("Upon acquisition of the Mt. Soledad Veterans Memorial by the United
3  States, the Secretary of Defense shall manage the property and shall enter into a
4  memorandum of understanding with the Mt. Soledad Memorial Association for the continued
5  maintenance of the Mt. Soledad Veterans Memorial by the Association.") Although the
6  MSMA was named as a Real Party in Interest and has been involved in litigation, the Court
7  concludes it is not presently a Defendant. The only way it can be a party at this point is to
8  intervene.

9  Plaintiffs attempt to minimize the MSMA's role, arguing "Congress did nothing more
10 than direct that the government contract with the MSMA for 'maintenance.'" (Consolidated
11 Opp'n at 9:21–23.) At the hearing, Plaintiffs argued essentially the same thing, contending
12 that the MSMA was little more than a hired groundskeeper. At the hearing, Plaintiffs and the
13 MSMA also disputed what the MSMA's role is in preserving the cross as part of the
14 memorial.

15 The MSMA correctly points out that it has a unique role that was created, and is
16 recognized and protected by law. A memorandum of understanding (MOU) was entered into
17 between the Department of the Navy and the MSMA.(MSMA's Mot. to Intervene, Ex. E.) The
18 MOU directs the MSMA to invest money and effort in maintaining, repairing, and preserving
19 the memorial; gives the MSMA priority in using the memorial; and provides for the MSMA's
20 continued installation of memorial plaques at the memorial. It also gives the MSMA other
21 options not available to the general public, such as proposing capital improvements. In
22 return, the government has agreed not to take any actions that would damage or disturb
23 existing plaques, not to make any improvements without consulting with MSMA, and to use
24 its best efforts to avoid any improvement projects that are inconsistent with improvement
25 plans the MSMA has submitted to the government and which the government has approved.

26 The memorial plaques the MSMA is authorized to install involve yet a different kind
27 of interest. While the MSMA does not retain a property interest in the plaques, it does have
28 a responsibility to the families of veterans who paid substantial sums of money to have them

installed. Members of some of those families previously filed a brief as *amici* with this Court (Docket no. 236), emphasizing that they memorialized their deceased relatives by plaques and memorial services held at the memorial, and that the memorial serves as a monument and place where families, friends, and comrades can remember and pay tribute to fallen war veterans. These *amici* argued that the cross served as a symbol of their loved ones' sacrifice and death, and that removing it would cause them a great deal of grief and dishonor the fallen service members. The MSMA's interests are aligned with the interests of veterans' families who are in this position. And the MSMA's role, recognized in the MOU, as administrator of the plaques, would be affected by a major change to the memorial's character.

The MOU, in short, provides for a division of rights and responsibilities, and gives the MSMA interests different from those of the government and even potentially inconsistent. The interests of the MSMA are not coterminous with those of the United States, and, the Court finds, the United States cannot adequately represent the interests of its partner. The MSMA's interests are legally protected because they are embodied in the statute as well as in the MOU.

At the outset of the current litigation, there was no reason to question that the United States would vigorously defend the statute preserving the memorial. The MSMA contends that a number of developments have drawn this assumption into question, however. First, when the Ninth Circuit reversed this Court, the United States delayed filing a petition for *certiorari*, seeking two extensions of time and citing as one of the reasons the need to consider whether it would pursue *certiorari* at all. The United States also opposed the MSMA's participation as a party in the litigation in the Supreme Court, and otherwise attempted to exclude the MSMA from fully participating in the *certiorari* process. In addition, the proposed intervenors point to several recent examples of the current administration's refusal to defend duly enacted statutes or portions of statutes from constitutional challenge. None of these developments directly shows that the United States will not vigorously defend the statute and the MSMA's interest, but together they demonstrate that the MSMA's

concerns have at least some basis. At the hearing, the government's counsel represented that, *at present*, the government intends to defend the statute vigorously, but he stated he could not offer assurances that this would not change.

One development that triggered the intervention motions was a report that the United States had or was preparing to engage in settlement discussions behind closed doors. Groups dedicated to defending the memorial—including the proposed intervenors— were said to be excluded from the discussions. The United States has sought to reassure these groups that any talk of settlement is premature, and at the most recent hearing trial counsel for the United States represented that he had not engaged in any settlement discussions. But while the United States has never said it is preparing to or considering abandoning the defense of the statute in whole or in part, such a fear does not appear as baseless as the United States suggests. Although the mere fact that the United States chooses to engage in settlement discussion does not mean it will settle, it does signal that the United States is considering settlement. If settlement were not being considered, there would be no reason to waste time and resources discussing it.

As the Court noted in its order of July 29, 2008, the statute is aimed particularly at maintaining the memorial site. *Trunk v. City of San Diego*, 568 F. Supp. 2d 1199, 1209 (S.D.Cal., 2008). If for some reason maintaining the cross becomes infeasible (for example, if the cross became structurally unsound), the Court's view is that the statute does not require that it be replaced. *Id*. at 1209 and n.10.[2] That being said, the statute emphasizes the importance of the cross as part of an integrated memorial, *see* Pub. L. 109-272, § 1(3) ("a memorial cross is fully integrated as the centerpiece of the multi-faceted Mt. Soledad Veterans Memorial that is replete with secular symbols), and the unacceptability of removing it by means of some undemocratic process, such as judicial fiat (or, presumably, backroom settlement). *See* Pub. L. 109-272, § 1(6) (finding that "76 percent of the voters of San Diego

---

[2] At the hearing, the MSMA expressed its view that the statute would require replacing the cross in such a situation. Hypothetical questions concerning the future of the memorial in the event it has to be refurbished are not before the Court. But this dispute illustrates the MSMA's viewpoint and interests may be different from the United States'.

supported donating the Mt. Soledad Memorial to the Federal Government only to have a superior court judge of the State of California invalidate that election").[3]

Taking into consideration all of these factors, the Court finds that the MSMA has a protectable interest which is not adequately represented by the United States. Because the MSMA will be bound by the judgment and required to abide by whatever injunction the Court may issue, continuing to litigate this action (or allowing it to be settled) without the MSMA's involvement as a party would impair the MSMA's ability to protect its rights. If an injunction is to be issued or a settlement reached, the MSMA would effectively be locked out and unable to protect its rights unless it is granted party status.

The Court therefore holds that all four requirements for the MSMA's intervention of right are met here, and that such intervention is appropriate. In the alternative, even if intervention of right were not appropriate, the Court finds that permissive intervention is appropriate under Rule 24(b), and grants intervention to MSMA on that basis.

**San Diegans for the Memorial**

San Diegans for the Memorial is a group of citizens formed in 2005 for the purpose of finding a constitutionally permissible way for the cross to remain part of the memorial. Their briefing shows they are fervent and prepared to litigate the issues, and the fact that this organization's members live in San Diego and have advocated for it gives them a connection to the memorial that is not shared by the general public.

While this group has an obvious interest in preserving the memorial, they have no significantly protectable legal interest. They of course have a generalized interest in making sure their government functions in aboveboard fashion, that democratically-enacted statutes are given due respect and protection, and that any political gains they have worked for[4] are

---

[3] The superior court's decision was reversed on appeal after the passage of this statute.

[4] At the hearing, this organization's counsel made clear he considered the statute the organization's own work, because its members worked to draft and promote it. Accepting the fact that San Diegans for the Memorial urged passage of the statute preserving the memorial, the Court has previously rejected the proposition that the statute was the work of private individuals rather than of Congress. *See Trunk*, 568 F. Supp. 2d at 1208 (holding that

not undone by a court decision they believe to be erroneous, or by a private settlement. That being said, a significantly protectable interest requires an interest protectable under some law and a relationship between the legally protected interest and the claims at issue in the lawsuit. *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (citation omitted). *See also Newdow v. U.S. Congress*, 313 F.3d 495, 500 (9th Cir. 2002) (observing that although citizens are aggrieved when duly enacted laws are challenged or not followed, they lack standing to defend the laws). The interests of San Diegans for the Memorial do not meet this requirement. Intervention of right, and permissive intervention are both inappropriate here.

Independently, because the Court is granting the MSMA's motion to intervene, the fourth Rule 24(a) factor weighs against allowing San Diegans for the Memorial to intervene. Despite the organization's past misgivings the MSMA does not fully share their objectives, it appears to the Court that the interests of San Diegans for the Memorial will be adequately represented by the MSMA.

**Conclusion and Order**

Bearing in mind the Court's obligation to apply the standards liberally in favor of intervention, *Southwest Ctr. for Biological Diversity,* 268 F.3d at 817, the Court **GRANTS** the MSMA's motion to intervene as a Defendant in this action. San Diegans for the Mt. Soledad Memorial and Representatives Bilbray and Hunter may file briefs as *amici*. The two Representatives should file one brief for the two of them, rather than two separate briefs.

**IT IS SO ORDERED**.

DATED: December 12, 2012

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

lobbying and public advocacy cannot be regarded as having caused Congress' passage of the statute) (citations omitted). *See also Trunk v. City of San Diego*, 629 F.3d 1099, 1109 (9th Cir. 2011) (holding that the role of advocacy groups is not probative of the statute's purpose, and instead looking to Congress' own statements of purpose).